CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 29, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ALUCIOUS WILLIAMS, JR., Plaintiff, | ) | Civil Action No. 7:24-cv-00369 |
| v. | ) | |
| MS. FLETCHER, *et al.*, Defendants. | ) | By: Elizabeth K. Dillon Chief United States District Judge |

**MEMORANDUM OPINION**

Alucious Williams, Jr., a Virginia inmate acting *pro se*, brought this civil rights action pursuant to 42 U.S.C. § 1983 against nine defendants. (Compl., Dkt. No. 1; Affidavit, Dkt. No. 1-1.) The complaint relates to plaintiff's incarceration at Red Onion State Prison. Plaintiff alleges that he was wrongfully placed on a behavioral housing plan in violation of his constitutional rights. Williams also asserts claims for unlawful conditions of confinement, excessive force, and deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

Seven of the defendants[1] have moved to dismiss the claims brought against them, contending that Williams has failed to sufficiently allege their personal involvement in any deprivation of constitutional rights. (Dkt. No. 25.) Williams has responded to this motion, and the defendants replied. (Dkt. Nos. 34, 36.) One of the defendants, Sgt. Brandham, is in default (Dkt. No. 38), and Williams moves for default judgment against this defendant (Dkt. Nos. 40, 42). Another defendant, Ms. Fletcher, has not been served or appeared in this action.

For the reasons stated below, defendants' motion to dismiss will be granted in part and denied in part. The court will also direct Sgt. Brandham, now represented by counsel, to respond

[1] These defendants are Blevins, Larry Collins, Counselor Kegley, Creech, Kegley, King, and Sheppard.

to plaintiff's motions for default judgment. Finally, the court will dismiss plaintiff's claims against Fletcher.

## I. BACKGROUND

In considering a motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). In the light most favorable to the plaintiff, this suit is based upon the following events as set forth in Williams' complaint. (Dkt. Nos 1, 1-1.) The court has also taken judicial notice of certain operating procedures from the Virginia Department of Corrections (VDOC). *See* VDOC Operating Procedure 730.5, *MHWS: Behavior Management*, Ex. 1, Dkt. No. 26-1; *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that the court may "properly take judicial notice of matters of public record" when deciding a Rule 12(b)(6) motion).

### A. Plaintiff's Complaint[2]

Williams alleges that from January 25, 2022, through March 10, 2022, he was placed in a mental health-based housing assignment referred to as the "Self-Management Behavioral Housing Plan" (SMHP). Williams states that he was placed in this assignment in error because he was not suicidal or "continually displaying disruptive behavior." (Compl. 3.)

On January 25, 2022, plaintiff was transferred from medical cell # 1 to B-building cell B-305. Williams was told by defendants Fletcher and Sheppard that the Multi-Disciplinary Treatment Team (MDT) had conducted a hearing without giving Williams any notice or opportunity to appear. The MDT decided to place Williams in the SMHP. The MDT included Fletcher, Sheppard, Creech, Mr. Kegley, Major King, Counselor Kegley, Assistant Warden

---

[2] Williams attached an affidavit to his complaint that largely recounts the same allegations as his complaint, except as noted herein. (Dkt. No. 1-1.)

Blevin, and Unit Manager Larry Collins. The MDT decided to use this status to manage Williams' behavior, and his progression in the program was determined by his behavior. (*Id.*)

Between January 25, 2022, and February 8, 2022, Williams was assessed by Q.M.H.P. [Qualified Mental Health Professional] Sheppard twice. Sheppard acted maliciously by only restoring certain rights, such as having a shirt, wash cloth, towel, shower shoes, and being able to shower. (Compl. at 4.) Williams was moved from B-305 to C-510 on February 8. Williams was told that that his status had been upgraded and he did not need to be in a camera cell. Between 1:00 and 3:00 p.m., Williams spoke with Q.M.H.P. Kegley, who stated that he had taken over the program now that he was in the C building. Even though Sheppard had said otherwise, Kegley told Williams that he was not allowed to have reading and writing material, but he would receive his sheets, clothing, and incoming mail. (*Id.*)

Williams was moved to C-401 on February 10, 2022. He was in this cell until February 28, 2022, which had feces on the window, walls, floor, and sink. "Due to this" Williams was "brutally beaten" by five officers on February 12, 2022. (*Id.*)

On February 23, 2022, Williams spoke to Assistant Warden Fuller about being "illegally housed" on behavioral status (i.e., SMHP). The next day, Williams spoke to Warden Rick White. After speaking to White, Williams finally received his clothing.

Plaintiff was moved to another cell, C-301, on February 28, 2022. (*Id.* at 5.) On March 1, Williams spoke to Mr. Daniels, who is the head of the RHU program. Williams told Daniels about the assault that occurred on February 12. Williams also talked to Daniels about his housing status. Williams was removed from this status on March 9 and received his property on March 10. (*Id.*)

During the time he was housed in behavioral status, from January 25 through March 10, 2022, plaintiff was deprived of personal items, reading or writing material, and was forced to endure extremely cold temperatures. Williams was in constant pain due to being so cold. He also was unable to shower, brush his teeth, or wash his hands. Because he did not have any eating utensils, he was forced to eat with his hands. Williams alleges that Red Onion staff used this status to intimidate him so he would not file lawsuits. Williams was afraid to eat or sleep because he worried that prison staff would kill him. (*Id.*) Officers would give other inmates his mail and have other inmates antagonize Williams.

After his assault on February 12, Williams was denied medical treatment, and he was housed in a cell with blood and feces on the walls. (*Id.* at 6.) Plaintiff suffered a fractured left eye socket and jaw and had severe swelling on the left side of his face. His right eye was split and bleeding which needed stitches and gave him dark areas around his eyes. Williams claims that the MDT team refused to advance him in the program with malicious intent, resulting in fear and hopelessness. (*Id.* at 6–7.)

Williams then claims that he was "illegally" assigned to SMHP housing from June 28, 2022, through July 28, 2022. (*Id.* at 7.) On June 28, correctional officer Neece attempted to force Williams to leave the recreation yard prematurely. Williams claims this was in retaliation for his complaints about Red Onion staff and because of his complaints about his property not being returned to him since he arrived back at Red Onion on June 23, 2022. (*Id.* at 7.) This led to an incident where Williams was falsely accused of spitting on Neece. Williams was taken back to his cell and threatened on the way there.

Back in his cell, after about 20 to 30 minutes, Lt. Williams and several other officers arrived and instructed Williams to submit to a strip search. (*Id.* at 8.) Williams complied and

was placed in ambulatory restraints in front of his cell, C-301. Williams was then placed in the cell, which was covered in feces, blood, spit, and urine. Williams was still in restraints until he was taken to a meeting with an independent psychologist from the courts between 2:00 and 4:00 p.m. Williams was given clothing for the meeting. Williams told the psychologist that he was being held illegally under the SMHP. Williams also told the psychologist about the condition of his cell and that an unknown device or chemical agent had been illegally placed on his person. Williams noticed that treatment officers Jones and Mullins were listening to plaintiff's conversation with the psychologist. Williams was then returned to his cell and forced to return his clothing. Later that day, Williams informed Unit Manager Larry Collins and Warden Rick White about the condition of his cell and being illegally placed on the behavioral housing status. (*Id.* at 9.)

In the evening of June 28, 2022, Lt. Barton, Sgt. Allen, Sgt. Grubbs, and Sgt. Brandham made rounds in the C-3 pod. Williams told Lt. Barton about the state of his cell, and Warden White authorized Willams to be placed in another cell. Brandham returned to the cell and began to spray Williams with cleaning solution through the window grate. Brandham asked, "is that clean enough for you?" Some of the solution irritated plaintiff's eyes and skin. (*Id.*)

At dinner on July 1, 2022, correctional officer Neece gave plaintiff a tray without dessert or bread. Williams was sprayed with disinfectant again that evening. (*Id.*)

From June 28, 2022, through July 26, 2022, Williams was not allowed to shower, and he developed bumps and a rash on his arms and chest. Williams also developed a boil on his right calf. Counselor Martin filled out two informal complaints for Williams about his living conditions. Williams was seen by sick call on July 10, 2022, and he was given an ointment for the rash and the boil. (*Id.* at 10.) Following the complaints, Williams received two blankets, a t-

shirt, reading and writing material, and legal work from Lt. Williams. Williams was also allowed to shower again. He was moved from C-301 to C-308 on July 19, 2022.

On July 25, 2022, Williams spoke to Unit Manager Gibson, Unit Manager Collins, Lt. Williams, and Daniels, the head of the R.H.U. program, about his court date, being transferred back to "NCDAC", and illegally being housed on the behavioral housing plan, and he was officially removed from this status. (*Id.* at 10.)

In the affidavit attached to his complaint, Williams adds allegations occurring in September 2022. Williams claims that on September 29, 2022, several inmates conspired to blow plaintiff's electricity by sticking staples in their electrical sockets and pouring urine in Williams' vent. (Dkt. No. 1-1 at 8.) Plaintiff notified Sgt. Dickenson who took Williams' emergency grievance and gave it to Lt. Williams. Williams discussed his complaints with Lt. Williams, Sgt. Dickenson, and correctional officer Mullins. Plaintiff also filed a complaint with the Attorney General.

At outside recreation on September 30, 2022, Williams retaliated against one of the inmates who knocked out his electricity. Correctional officers Hodges and Dotson lied and stated that Williams had thrown urine on them and this inmate. Plaintiff was escorted back to C-2 pod. Lt. Massingill, Lt. Williams, and other officers forced Williams to his knees and cut plaintiff's shirt and pants off. Williams was put in ambulatory restraints and informed that he was back on the SMHP, where he remained until October 28, 2022. (*Id.* at 9.)

Generously construed, Williams appears to allege claims based on excessive force and the conditions of his confinement in violation of the Eighth Amendment, deliberate indifference to serious medical needs in violation of the Eighth Amendment, and some type of due process violation. Williams requests $10,000 in compensatory damages against each defendant, $10,000

in punitive damages against each defendant, and injunctive relief preventing defendants from placing Williams on the behavioral housing status. (Compl. at 12.)

**B. Relevant VDOC Operating Procedures**[3]

The MDT is responsible for "review[ing] individual inmates related to restorative housing and step-down status and act[s] as the Institutional Classification Authority to make recommendations for housing status, transfer, security level, good time class, etc." VDOC Operating Procedure 730.5 at 3–4. The Self-Management Housing Plan (SMHP) is "intended to provide enhanced housing protocol for inmates who are displaying acting out behavior that is compromising their daily functioning and significantly interfering with the orderly operation of the institution on a repetitive basis, but the behaviors are not considered to be the result of a severe mental illness." *Id.* at 11. "Examples of volitional behavior include swallowing various items, scratching or cutting self, insertion of various items into body orifices, altering or damaging state property in a manner that increases the risk of harm to self or others, and/or smearing feces." *Id.* SMHP is used "to minimize the risk of continued acting out by an inmate who has recently displayed such behavior by decreasing exposure to items that they may use for these volitional behaviors." *Id.*

**C. Plaintiff's Response and Exhibits**

Williams filed a 38-page response to the motion to dismiss and attached 10 pages of exhibits. (Dkt. Nos. 34, 34-1.) The response largely recounts the same or similar allegations that are contained in plaintiff's complaint. Plaintiff also commits several pages to recounting and describing VDOC policy. (*Id.* at 11–15.) Further, Williams attempts to explain how various

[3] This procedure was provided as an attachment to the motion to dismiss. (Dkt. No. 26-1.) The court can consider this as a matter of public record without converting this into a motion for summary judgment. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

defendants are personally responsible for the violations alleged in his complaint. (*See id.* at 19–21.)

**D. Proceedings Against Sgt. Brandham and Fletcher**

After plaintiff returned a consent to fee form, the court issued an order for the defendants to be served pursuant to the Agreement of Acceptance of Service with the Office of the Attorney General. (Dkt. No. 7.) The Attorney General entered a notice of appearance and a waiver of service on behalf of seven of the defendants, but not Brandham or Fletcher. (Dkt. Nos. 9, 10.) Instead, the Attorney General gave notice that Fletcher and Brandham are no longer VDOC employees and provided their last-known addresses. (Dkt. Nos. 12, 13.)

The court sent waiver requests to Fletcher and Brandham. (Dkt. No. 14.) Fletcher's request was returned as undeliverable. (Dkt. No. 18.) The court ordered plaintiff to respond with an address where Fletcher could be served. (Dkt. No. 19.) Williams' response indicates that he is unable to locate an address for Fletcher. (Dkt. No. 33.) Sgt. Brandham was served by the United States Marshal Service. (Dkt. No. 24.) His answer was due by October 1, 2024. (*Id.*)

The Clerk entered default against Brandham on May 21, 2025. (Dkt. No. 38.) Plaintiff moved for default judgment against Brandham on July 7, 2025. (Dkt. Nos. 40, 42.) Counsel has since entered an appearance for Brandham. (Dkt. No. 44.)

II. ANALYSIS

**A. Motion to Dismiss**

When analyzing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must view all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A plaintiff must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

In addition, *pro se* plaintiffs are held to a "less stringent standard" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *See Manigault v. Capital One, N.A.*, CIVIL NO. JKB-23-223, 2023 WL 3932319, at *2 (D. Md. June 8, 2023). While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

**B. Section 1983 Claims**

To state a claim under § 1983, "a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, a section 1983 plaintiff must plausibly allege the personal involvement of a defendant. *See, e.g.*, *Iqbal*, 556 U.S. at 676–77; *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). Liability under § 1983 is "personal, based upon each defendant's own constitutional

violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). As a result, general and collective allegations against groups of defendants fail to allege a plausible claim. *Langford*, 62 F.4th at 125.

**1. Eighth Amendment**

The Eighth Amendment's prohibition against cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "The Eighth Amendment [thus] places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A conditions of confinement claim must allege (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind. *London v. Stiltner*, Civil Action No. 7:23cv00700, 2025 WL 1805329, at *2 (W.D. Va. June 30, 2025) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Finally, the Eighth Amendment also proscribes deliberate indifference to a serious medical need. A prisoner must allege facts sufficient to show that (1) the deprivation was sufficiently serious and (2) the prison officials acted with a sufficiently culpable state of mind toward the prisoner's medical needs. *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022).

Defendants' sole argument in favor of dismissing Williams' Eighth Amendment claims is that Williams fails to allege the personal involvement of the defendants in the alleged deprivations of constitutional rights. The court disagrees with this argument. Williams alleges, for example, that Sheppard acted maliciously by only restoring certain rights to Williams after Williams had been placed on a SMHP. (Compl. at 4.) This is a sufficient allegation of personal involvement with respect to a conditions of confinement claim. Also, the MDT was responsible

for placing Williams on the SMHP, and the seven defendants who have moved to dismiss are alleged to be members of the MDT. Finally, Williams also alleges that he spoke to Collins about the condition of his cell, which could be sufficient to impose supervisor liability on this defendant. To establish a § 1983 supervisory liability claim, a plaintiff must show (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable" risk of constitutional injury, (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an affirmative causal link between the supervisor's inaction ad the constitutional injury. *Bowers v. Sandy*, Civil Action No. 3:23-cv-00119, 2025 WL 1982907, at *4 (N.D.W. Va. July 16, 2025) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

In sum, the court finds that plaintiff's allegations are sufficiently detailed and have plausibly alleged the personal involvement of the defendants who have moved to dismiss in the alleged violations of Williams' Eighth Amendment rights. The court declines to dismiss the Eighth Amendment claims on this basis.

**2. Due process**

The Due Process Clause of the Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To establish that a government actor violated this proscription, 'a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law.'" *Cartagena v. Lovell*, 103 F.4th 171, 182 (4th Cir. 2024) (quoting *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015)). "In the carceral context, a prisoner claiming a violation of his right to procedural due process must show: (1) that there is a state

statute, regulation, or policy that creates such a liberty interest, and (2) that the denial of such an interest imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Shaw v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "Satisfying these requirements is a difficult task, and intentionally so." *Desper v. Clarke*, 1 F.4th 236, 247 (4th Cir. 2021).

Even if the court were to assume that there is a statute, regulation, or policy that creates a liberty interest in not being placed in SMHP status—Williams has not pointed to or described the source of his purported liberty interest—Williams has not plausibly alleged that this placement by the MDT resulted in an atypical and significant hardship. The deprivations alleged by Williams are not significant or atypical. Limitations on "privileges, property, and activities" do not constitute "atypical and significant" hardship; furthermore, temporary assignment to restricted housing in conditions similar to the general population does not exceed Williams' sentence "in such an extreme way as to give rise to the protection of the Due Process Clause by its own force." *DeFour v. Webber*, Case No. 7:22CV00379, 2023 WL 6149279, at *11 (W.D. Va. Sept. 20, 2023) (citing *Sandin*, 515 U.S. at 486; *Beverati v. Smith*, 120 F.3d 500, 503–04 (4th Cir. 1997) (holding that segregated confinement for administrative reasons for six months in cells with vermin, human waste, flooding toilet, excessive heat, dirty clothing, linens, and bedding, with longer periods in cell and no outside recreation, with no educational or religious services, and with cold food in smaller portions was not so atypical and significant to impose significant hardship under the *Sandin* analysis)). Williams' allegations make clear that his placement in SMHP status was cumulatively less than six months—January 25 through March 7, 2022; June 28 through July 28, 2022; and September 30 through October 28, 2022.

For these reasons, plaintiff has failed to allege a plausible due process claim.

**C. Claims Against Brandham**

As noted, the Clerk has entered default against defendant Brandham, and Williams moved for default judgment. Counsel has now made an appearance on behalf of Brandham. (Dkt. No. 44.) Due to this appearance, the court will direct Brandham to file a response to Williams' motions for default judgment.

**D. Claims Against Fletcher**

The court's order that directed Williams to provide an address to serve Fletcher warned that failure to comply would result in any claim against Fletcher being dismissed without prejudice. This is because plaintiffs, even *pro se* prisoners, bear the "reasonable burden of identifying some address where service can be properly made." (Dkt. No. 19.) Williams failed to comply with this order.

Williams explains that he has submitted requests for this information to the ROSP warden's office, but he was told that only the Office of the Attorney General could request such information. (Dkt. No. 33.) As the court has recounted herein, the OAG has already provided an address for Fletcher, but service could not be accomplished at that address.

Because Williams did not comply with the court's order, the claims against Fletcher will be dismissed without prejudice. *See* Fed. R. Civ. P. 41(b); *Strickland v. Spartanburg Cnty. Sheriff's Office*, C/A No. 6:18-2437-MGL-KFM, 2018 WL 5650034, at *2 (D.S.C. Oct. 9, 2018) (recognizing the court's authority to dismiss a case when a *pro se* plaintiff fails to comply with court orders).

III. CONCLUSION

The court will issue an appropriate order granting in part and denying in part defendants' motion to dismiss, dismissing the claims against Fletcher, directing Sgt. Brandham to respond to

the pending motions for default judgment, and directing the defendants, other than Brandham, to file a motion or motions for summary judgment.

Entered: September 29, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge